IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

NATIONAL ORGANIZATION
FOR MARRIAGE, INC.,

       Plaintiff,

v.                            CASE NO.: 1:10cv192-SPM/GRJ

DAWN ROBERTS, in her official capacity
as Florida Secretary of State, et al.,

       Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

       This cause comes before the Court on the parties' cross motions for summary judgment.  Docs. 45 and 47.  The Court denied Plaintiff's motion for preliminary injunction in a previous order, finding that Plaintiff was not likely to succeed on its constitutional challenges to Florida's electioneering communications laws.  Upon careful review of the arguments now submitted by the parties, the Court finds that Defendants are entitled to judgment as a matter of law.

### Background

       Plaintiff, the National Organization for Marriage, Inc., (NOM) is a nonprofit

organization whose stated mission is "to protect marriage and the faith communities that sustain it."  Doc. 1-2.  NOM is not connected with any political candidate, nor does it have as its primary purpose the election of candidates.  NOM is, however, involved in election activities at the state and local level to oppose same-sex marriage.  Id.  To this end, NOM planned to broadcast television and radio ads and send direct mail targeting candidates in Florida for the November 2010 election.[1]  NOM's communications were planned to take place just prior to the election and targeted the geographic areas that the candidates would represent.  NOM's communications name specific candidates, state that the candidate is running for office, state the candidate's view on same-sex marriage, state whether the candidate is "good" or "bad" for Floridians, and exhort constituents to call the candidate and ask if he or she "support[s] marriage only between one man and one woman."  Docs. 1-3, 1-4, 1-5, and 1-6.

NOM's proposed communications bring it within the scope of Florida's electioneering communications laws, which were promulgated to provide information to voters about who is behind election advertisements.  The laws contain disclosure and registration requirements for organizations that spend or receive more than $5,000 for communications if those communications are publicly distributed (by television, radio, newspaper, magazine, mail, or

---

[1]  Although the election has since passed, the issues raised by NOM are not moot since they are capable of repetition, yet evading review.  FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 462-63 (2007).

telephone) shortly before an election (30 days for primaries, 60 days for general elections), identify a candidate, target the geographic area the candidate would represent if elected, and are "susceptible of no reasonable interpretation other than an **appeal to vote** for or against a specific candidate."  § 106.11(18)(a), Fla. Stat., emphasis supplied.  The "appeal to vote" language was specifically incorporated into the statute to ensure that regulations would only affect organizations engaged in electioneering communications for or against a particular candidate, which the Government has a compelling interest to regulate. See McConnell v. FEC, 540 U.S. 93, 190 (2003).

The Florida laws do not prohibit NOM from engaging in its planned election communications.  NOM would, however, be required to comply with disclosure and registration requirements such that NOM contends the communications "would simply not be worth it for NOM."  Doc. 1 at ¶ 21.

**Challenged Laws**

NOM's challenge is limited to three provisions in the Florida Statutes: sections 106.011(18)(a), 106.011(19), and 106.03(1)(b).  The challenged portions of the statutes read as follows:

> (18)(a) "Electioneering communication means any communication that is publically distributed by a television station, radio station, cable television system, satellite system, newspaper, magazine, direct mail, or telephone and that:
> > 1.  Refers to or depicts a clearly identified candidate for office without expressly advocating the election or

defeat of a candidate but that is susceptible of no
reasonable interpretation other than an **appeal to
vote** for or against a specific candidate;
2.  Is made within 30 days before a primary or special
primary election or 60 days before any other election
for the office sought by the candidate; and
3.  Is targeted to the relevant electorate in the
geographic area the candidate would represent if
elected.

§ 106.11(18)(a), Fla. Stat., emphasis supplied.

(19) "Electioneering communications organization" means any
group, other than a political party, political committee, or committee
of continuous existence, whose election-related activities are limited
to making expenditures for electioneering communications or
accepting contributions for the purpose of making electioneering
communications and whose activities would not otherwise require
the group to register as a political party, political committee, or
committee of continuous existence under this chapter.

§ 106.011(19), Fla. Stat.

(b) 1.  Each electioneering communications organization that
receives contributions or makes expenditures during a calendar
year in an aggregate amount exceeding $5,000 shall file a
statement of organization as provided in subparagraph 2. by
expedited delivery within 24 hours after its organization or, if later,
within 24 hours after the date on which it receives contributions or
makes expenditures for an electioneering communication in excess
of $5,000.

§ 106.03(1)(b), Fla. Stat.

The definitions in the statute trigger the State's regulatory authority over

electioneering communications organizations and lead to disclosure and

registration requirements, which are found in various other statutory sections.[2]

NOM insists that it is not challenging the disclosure and registration

requirements, it is challenging only the definitions for electioneering

communications and electioneering communications organizations.  NOM

contends that the definitions are unconstitutionally vague and overbroad because

they are driven by the "appeal to vote" test.  NOM also contends that the

challenged statutes cannot apply to NOM because its major purpose is not the

election of a candidate.

### Challenged Laws are not Vague

A law can be void for vagueness if it "fails to provide a person of

ordinary intelligence fair notice of what is prohibited, or is so standardless that it

authorizes or encourages seriously discriminatory enforcement."  United States

v. Williams, 553 U.S. 285, 304 (2008).  There is no vagueness concerning

whether NOM's electioneering communications are subject to valid regulation by

the State of Florida.

NOM makes no reasoned argument that the Florida statutes are vague as

applied to its proposed communications.  In the order denying NOM's motion for

preliminary injunction, the Court applied the "appeal to vote" test and found that

NOM's proposed communications met the test.  See doc. 22 at 7.  NOM, in fact,

---

[2]  See sections 106.0703 and 106.03, Florida Statutes, which impose
registration, recordkeeping, and reporting requirements.

concedes that its broadcast speech is unambiguously campaign related.  Doc. 50

at 7.  The Government has a compelling interest to regulate election

communications that are unambiguously campaign related.  <u>Federal Elections

Commision v. Wisconsin Right to Life, Inc.</u>, 551 U.S. 449, 469 (2007) (WRTL);

<u>Buckley v. Valeo</u>, 424 U.S. 1, 80 (1976).  Thus there is no vagueness concerning

the application of the Florida statutes to NOM's communications.

NOM suggests, however, that the Florida statutes are facially vague.  To

raise a successful facial challenge for vagueness, a plaintiff has the burden to

show that the law "can never be applied in a valid manner" and that "every

application of the statute creates an impermissible risk of suppression of ideas."

<u>New York State Club Ass'n, Inc. v. New York</u>, 487 U.S. 1, 11 (1988).  "[P]erfect

language and precise guidance have never been required even of regulations

that restrict expressive activity'."   <u>Id.</u> (quoting <u>Ward v. Rock Against Racism</u>, 491

U.S. 781, 794 (1989)).  What is important is that a statute avoid "wholly

subjective judgments without statutory definitions, narrowing context, or settled

legal meaning."  <u>Id.</u>.

The "appeal to vote" test adopted by Florida is not facially vague.  It

provides an objective standard that was created and applied by the Untied States

Supreme Court.  <u>WRTL</u>, 551 U.S. at 470, 476; <u>Citizens United v. FEC</u>, 130 S.Ct.

876, 889-90, 95 (2010).[3]  Under the plain terms of the Florida statutes, a

communication must be "susceptible of no reasonable interpretation other than

an appeal to vote for or against a specific candidate" to qualify as an

electioneering communication that is regulated under Florida law. §

106.011(18)(a), Fla. Stat.  The fact that "it may be difficult in some cases to

determine whether these clear requirements have been met" does not mean that

the statute is void for vagueness.  United States v. Williams, 553 U.S. 285, 306

(2008).  Even the Supreme Court has recognized the difficulty in distinguishing

true issue advocacy from election advocacy targeting candidates.  WRTL, 551

U.S. at 474.  While  "the distinction . . . may often dissolve in practical

application," Id. (quoting Buckley 424 U.S. at 42), the appeal to vote test, was

carefully crafted to avoid this problem by being simple in its terms and giving the

benefit of the doubt to protecting speech.  Id. at 469-70, 473-74 and n.7.  NOM

has failed to demonstrate that the test is facially vague.

### Challenged Laws are not Overbroad

A statute may be unconstitutionally overbroad if "in its reach it prohibits

---

[3]  NOM notes that Citizens United did away with the "appeal to vote" test as a limit on the government's power to regulate elections communications.  See Doc. 45-3 at 6 n.2.  It is not clear how the elimination of the limit supports NOM's position.  The Court in Citizen's United recognized that the BCRA disclosure requirements could be applied beyond speech that was express advocacy or its functional equivalent (i.e. appeal to vote test).  Citizens United, 130 S.Ct. at 915. The Florida laws, which abide by the appeal to vote test, stay safely within the scope of permissible regulation.

constitutionally protected conduct." Graynard v. City of Rockford, 408 U.S. 104,

114 (1972).  A law is facially overbroad if "a substantial number of its applications

are unconstitutional, judged in relation to the statute's plainly legitimate sweep."

United States v. Stevens, 130 S.Ct. 1577, 1587 (2010).

In this case, NOM's facial overbreadth challenge fails based on the

holdings in McConnell and WRTL.  McConnell rejected a facial overbreadth

challenge to regulations that targeted the functional equivalent of express

advocacy.  McConnell, 540 U.S. at 206-07.  And WRTL further refined what the

functional equivalent of express advocacy is by establishing the "appeal to vote"

test.  WRTL 551 U.S. at 469-470.  As discussed above, the test was specifically

designed to avoid restriction of protected speech by erring on the side of the

speaker in close calls.  WRTL 551 U.S. at 474 ("[T]he tie goes to the speaker.").

The appeal to vote test does not substantially restrict protected speech and is

therefore not facially overbroad.

Regarding the as applied challenge, NOM's argument is difficult to

comprehend.  NOM argues that it should not be subject to political committee

type burdens, yet NOM insists that it is not challenging the disclosure and

registration requirements of the statute.  The definitions challenged by NOM for

electioneering communications and electioneering communications organizations

fall squarely within the area where states may regulate based on the legitimate

interests states have in overseeing elections and providing information to voters.
McConnell, 540 U.S. at 196 (recognizing that the government's important interest
in providing voter information and avoiding corruption will justify  disclosure
requirements upon the "entire range of 'electioneering communications'");
Citizens United, 130 S.Ct at 915-16 (recognizing informational interest supporting
disclosure and allowing BCRA disclosure requirements to go beyond express
advocacy and its functional equivalent).  NOM's proposed communications meet
the statutory definitions and implicate legitimate state interests.  The definitions
are not overbroad as applied to NOM.

### Strict Scrutiny and Major Purpose

NOM contends that it cannot be subject to disclosure and registration
requirements because NOM's major purpose is not the election of a candidate
and because the statutes fail strict scrutiny.   These arguments fail because
neither strict scrutiny nor the major purpose test is applicable.

Strict scrutiny does not apply because the Florida statutes being
challenged would not prohibit NOM from engaging in its proposed speech; thus
a standard known as "exacting scrutiny" applies.  Citizen's United, 130 S.Ct. at
914.  Under exacting scrutiny, there must be "a '"substantial relation' between the
disclosure requirement and a 'sufficiently important' governmental interest."  Id.
(quoting Buckley 424 U.S. at 64).  The government has a sufficiently important

interest to "increase the fund of information concerning those who support [a] candidate . . . [and] shed the light of publicity on spending."  Buckley, 424 U.S. at 81.  Imposing a disclosure and registration requirements, as Florida has done, is substantially related to that interest.  Id.

There is no major purpose requirement because the statutes do not impose burdens upon NOM based on NOM's organizational status, but rather on NOM's speech that is unambiguously campaign related.  The major purpose requirement only applies when regulations are triggered by an organization's status as a political committee, in which case the Court has required that the committees be under the control of a candidate or have as its "major purpose" the nomination or election of a candidate.  Buckley 424 U.S. at 79.   When political committee status is not the trigger point for regulation, the Court has recognized that regulation is permissible for communications that are unambiguously campaign related, which includes express advocacy (Id. at 80) and the functional equivalent (McConnell, 540 U.S. at 191-92; WRTL, 551 U.S. at 465).

Under the Florida statutes, the trigger point for the disclosure and registration requirements is speech that is an "appeal to vote" under WRTL, and thus unambiguously campaign related.  Requiring disclosure for such speech satisfies the exacting scrutiny test.  Buckley, 424 U.S. at 81.

**Conclusion**

NOM has failed to show that the challenged statutes are constitutionally infirm.  The "appeal to vote" test adopted by Florida is not vague or overbroad.  Neither the "major purpose" requirement nor strict scrutiny is applicable.  The Florida statutes at issue pass exacting scrutiny because there is a substantial relation between the disclosure requirements and a sufficiently important governmental interest.  Accordingly, it is

ORDERED AND ADJUDGED:

1.      NOM's motion for summary judgment (doc. 45) is denied.

2.      Defendants' motion for summary judgment (doc. 47) is granted. The clerk shall enter judgment accordingly.

DONE AND ORDERED this 8th day of August, 2011.


*s/ Stephan P. Mickle*

Stephan P. Mickle
Senior United States District Judge